590 P.2d 449

**STATE of Arizona, Appellee,**

v.

**Louis Gene LeMATTY, Appellant.**

**No. 4180.**

Supreme Court of Arizona,
In Banc.

Jan. 19, 1979.

Rehearing Denied Feb. 21, 1979.

334

Bruce E. Babbitt, Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Eugene A. Burdick, Phoenix, for appellant.

HOLOHAN, Justice.

On March 23, 1977, an undercover Phoenix city policeman purchased a dangerous drug, Phencyclidine, from appellant Louis Gene LeMatty at LeMatty's home in Laveen, Arizona. Based upon the information

supplied to them by the undercover policeman, other officers attached to the Phoenix City Police Department obtained a search warrant from a magistrate the next day. The warrant was executed by the officers on the same date, and as a result of the ensuing search which yielded a usable quantity of Phencyclidine, appellant was charged with possession of dangerous drugs for sale in violation of A.R.S. §§ 32–1970(A) and 32–1996(C).

On April 6, 1977, a petition to revoke appellant's probation on a charge of possession of dangerous drugs was filed and a bench warrant for his arrest was issued. The petition to revoke probation was amended on April 27, 1977, to reflect the charge of sale of dangerous drugs.

Defendant filed motions to suppress the evidence of both the sale and the drugs seized at the time the search warrant was executed, challenging the authority of the Phoenix city police both to conduct a clandestine investigation and execute a search warrant outside the city limits. Both motions were denied. Thereafter the defendant waived trial by jury and submitted the case on the information contained in the police reports and the scientific analysis. The trial judge found the defendant guilty of the charge of possession of dangerous drugs for sale. Appellant's probation was also revoked upon a finding that he had taken part in a sale of dangerous drugs. Defendant was sentenced to serve not less than two and a half years nor more than four years concurrently on the charges of possession of dangerous drugs for sale and felony theft from a person (for which he had received probation in a 1975 proceeding). This appeal followed. We have jurisdiction pursuant to 17A A.R.S.Sup.Ct.Rules, rule 47(e)(5).

The only issue raised by this appeal is the same as that raised in the trial court below: Whether officers of the Phoenix City Police Department are authorized to execute search warrants and control drug and narcotic purchases outside the territorial limits of the city of Phoenix. Although appellant's challenges to the evidence of the sale (on which his probation revocation was based), and to the evidence resulting from the search are premised on the same statute, A.R.S. § 13–1361, nevertheless a brief discussion of the separate components of this case is warranted.[1]

## 1. THE PROBATION REVOCATION PROCEEDING

At the revocation proceeding, appellant presented evidence through the testimony of officers from the Phoenix city police and the Maricopa County Sheriff's office with regard to whether the Maricopa County Sheriff's office had been advised that the Phoenix city police would be acting in the county on the days of the sale and the search. It is appellant's contention that because no formal written evidence was produced by the Phoenix city police to show that they had the consent of the county officials to act outside Phoenix, the police therefore were acting outside their jurisdiction as set forth in A.R.S. § 13–1361[2] and the evidence of the sale should be suppressed. We think that the focus of appellant's argument is in error.

■ We have stated in the past that where a court in a probation revocation proceeding has a reason to believe that an individual is violating the conditions of his probation or engaging in criminal practices, the court may in its discretion thereupon revoke and terminate the probation. *State*

---

1. The two proceedings below were considered together with the consent of the defendant and in the interests of judicial economy. They were formally consolidated by an order issued by the Court of Appeals on December 8, 1975.

2. § 13–1361. Authority of peace officers
   The authority of a peace officer may extend in any of the following circumstances to any place within the state:

1. Where he has the prior consent of the chief of police, marshal, sheriff or other department or agency head with peace officer jurisdiction, or his duly authorized representative, having the primary responsibility for law enforcement within the jurisdiction or territory.
2. Under any of the circumstances set forth in § 13–1403.

*v. Bates,* 111 Ariz. 202, 526 P.2d 1054 (1974); 17 A.R.S. Rules of Criminal Procedure, rule 27.7(c). Such a conclusion must be established by a preponderance of the evidence. 17 A.R.S. Rules of Criminal Procedure, rule 27.7(b)(3). The conclusions of the trier of fact will only be reversed if they are found to be arbitrary and unsupported by any reasonable theory of evidence. *State v. Jameson,* 112 Ariz. 315, 531 P.2d 912 (1975).

The petition to revoke probation alleged that the defendant had violated the terms of his probation because he sold dangerous drugs and therefore did not conduct himself at all times as a law-abiding citizen as required by the conditions of probation. The material issue at the probation revocation proceeding, therefore, was the fact of sale.

▮ We do not believe that the identity of the purchaser, whether an undercover city policeman or a private citizen, is a necessary element in proving such a sale. The statute creating the offense makes no reference to the purchaser of the drug, and his identity is not an element of the crime. The gravamen of the offense is the unlawful sale itself. *People v. Adams,* 46 Ill.2d 200, 263 N.E.2d 490 (1970), *aff'd,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Clay v. United States,* 326 F.2d 196 (10th Cir. 1963), *cert. denied,* 377 U.S. 1000, 84 S.Ct. 1930, 12 L.Ed.2d 1050; A.R.S. § 32–1970(B). Therefore, since the purchaser's identity is not an element of the crime for which defendant was charged, here the issue of whether the police officer was acting outside his jurisdiction is not material to the evidence of the fact of the sale.[3]

We believe that the testimony of the undercover police officer who purchased the illegal drugs was sufficient to justify the trial judge in finding that based upon a preponderance of the evidence a violation had occurred. The revocation of probation was legally correct.

3. As a practical matter, we note that the trial court decided that the police were acting with the prior consent of the authorities in Maricopa County.

## 2. THE SEARCH AND SUBSEQUENT CONVICTION

Appellant contends that the court below improperly denied his motion to suppress the evidence gained from the search because the warrant was obtained and executed by Phoenix police while outside the territorial limits of the city of Phoenix. This circumstance, he argues, resulted in an illegal search and seizure forbidden under the Fourth and Fourteenth Amendments to the United States Constitution. Appellant urges that *Kirby v. Beto,* 426 F.2d 258 (5th Cir. 1970), *cert. denied,* 400 U.S. 919 and A.R.S. § 13–1361 mandate a conclusion by us that the presence of Maricopa County Sheriff's officers was necessary in order to make the warrant served by the Phoenix city police valid. We believe appellant's reasoning to be in error.

Stated briefly, the facts of *Kirby v. Beto, supra,* indicate that Dallas city police officers served a warrant outside the Dallas city limits but inside the city limits of Irving, Texas. The Fifth Circuit Court of Appeals stated that although the Dallas city police officers had no authority to serve a warrant outside the city limits, nevertheless the presence of an Irving police officer at the scene validated the service of the warrant. The *Kirby* court held that because an officer authorized to execute the warrant (the Irving police officer) was present, the presence of unauthorized officers (the Dallas police officers) did not make service of the warrant fatal. We believe that the reason for the *Kirby* court's decision can be found in Tex.Crim.Pro.Code Ann. art. 18.04 (Vernon) where the authority of peace officers to serve warrants is limited to "the proper county." No such legislative limits appear in our statutes.

▮ A.R.S. §§ 13–1445 and 13–1446[4] relate to obtaining and serving search war-

4. A.R.S. §§ 13–1445 and 1446 respectively provide:
   § 13–1445. Issuance; form of warrant; duplicate original warrant

rants in Arizona. Both statutes state that any peace officer in the state may serve search warrants issued by an impartial magistrate. A Phoenix city policeman is a peace officer in the state of Arizona, A.R.S. § 1–215(23); *see State v. Schmidgall,* 21 Ariz.App. 68, 515 P.2d 609 (1973); *State v. Dudgeon,* 13 Ariz.App. 464, 477 P.2d 750 (1970), and therefore he may serve a search warrant anywhere in the state.

Prior to the 1970 amendment to A.R.S. § 13–1445, the statute provided in part that the magistrate:

" . . . shall issue a search warrant . . ., and deliver it to a peace officer in his *county,* commanding him forthwith to search the person or place named . . .." (Emphasis supplied.)

█ Based upon the clear language of A.R.S. § 13–1445 after the 1970 amendment, we believe that the legislature withdrew the former territorial limitation of the authority of peace officers, and it provided that search warrants could be served by officers without reference to territorial jurisdiction.

█ We have said that in construing the meaning of several statutes, they should be read together to give effect to all if possible. *Ordway v. Pickrell,* 112 Ariz. 456, 543 P.2d 444 (1975); *City of Scottsdale v. McDowell Mountain Irrigation & Drainage Dist.,* 107 Ariz. 117, 483 P.2d 532 (1971); *Trickel v. Rainbo Baking Company of Phoenix,* 100 Ariz. 222, 412 P.2d 852 (1966). A practical construction is preferred to one which is absurd, and a practical construction is required if a technical construction would lead to mischief or absurdity. *People v. Pina,* 72 Cal.App.3d Supp. 35, 140 Cal. Rptr. 270 (Super.Ct., App.Dept.1977).

█ We note that the authority in A.R.S. § 13–1361 is designed to be in addition to any other authority granted by other provisions of law. *See* A.R.S. § 13–1363. Reading A.R.S. § 13–1361 together with A.R.S. §§ 13–1445 and 13–1446, their meaning is that a peace officer may serve a validly obtained search warrant anywhere in the state, but other police activities not defined elsewhere in the statutes require consent in advance[5] under A.R.S. § 13–1361. This construction, we believe, will serve to carry out the intent of the legislature.

For the above reasons we hold that the Phoenix city police as peace officers within the state of Arizona properly obtained and served the warrant to which appellant objects. Under the circumstances we find that no violation of appellant's constitutional rights occurred. Both motions to suppress were properly denied, and appellant's conviction is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concurring.

---

A. If the magistrate is satisfied that probable cause for the issuance of the warrant exists, he shall issue a search warrant commanding a search by *any peace officer* of the person or place specified, for the items described.

B. The warrant shall be in substantially the following form:

County of _____, state of Arizona.

*To any peace officer in the State of Arizona* . . . (Emphasis ours.)

§ 13–1446. Service of warrant; breaking and entering to execute

A. A search warrant may be served *by any peace officer* but by no other person except in aid of an officer engaging in such service. . . (Emphasis ours.)

5. Since the issue was not raised by the facts of this case, we make no determination of the question whether an undercover policeman purchasing drugs while outside his jurisdiction without prior consent of the relevant authorities under A.R.S. § 13–1361 could, if arrested after sale, be charged with and prosecuted for unlawful possession of dangerous drugs.